UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                                          Case No. 2:16-cv-166
                                                                  HON. GORDON J. QUIST

FRED GOVERN,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Fred Govern. On June 7, 2017, the undersigned held an evidentiary hearing to resolve factual disputes regarding whether Plaintiff exhausted his administrative remedies.[1] For the reasons stated below, the undersigned now recommends that that Plaintiff be found to have exhausted his available administrative remedies.

        Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the

---

[1] At this evidentiary hearing, the undersigned heard testimony regarding exhaustion issues in four of Plaintiff's cases— *Alexander v. Govern et al.,* 2:16-cv-66; *Alexander v. Salmi et al.,* 2:16-cv-96; *Alexander v. Kind et al.,* 2:16-cv-98; *Alexander v. Govern,* 2:16-cv-166.

administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, BB.  The respondent at Step II is designated by the policy.  *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after

receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

A prisoner's failure to exhaust administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove by a preponderance of the evidence. *See Lee v. Willey,* 789 F.3d 673, 678 (6th Cir. 2015); *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). When factual disputes arise regarding the issue of exhaustion, the Sixth Circuit has found that a district court may resolve the disputes in a bench trial. *Lee v. Willey,* 789 F.3d 673, 678 (6th Cir. 2015).

In this case, Defendant moved for summary judgment on the grounds of exhaustion because Plaintiff did not file any grievances related to his claims through Step III. In response, Plaintiff explained that he attempted to exhaust his administrative remedies by filing three different grievances. In the first grievance, Plaintiff claimed that he filed a Step I grievance on May 17, 2015. He claimed that he gave a Step II grievance to Correction Officer Kind on June 15, 2015. Plaintiff alleged that CO Kind never turned in his Step II grievance. Plaintiff also claimed that he gave a second handwritten Step II grievance to Correction Officer Holmes. After he did not receive a response to either Step II appeals, Plaintiff alleged that he gave a Step III grievance to ARUS Kirsten Giesen on July 9, 2015. Plaintiff never received a response to his Step III grievance.

In the second grievance, Plaintiff claimed that he gave a Step I grievance to Correction Officer Mayer on May 21, 2015. Plaintiff also claimed that he gave another Step I grievance to Correction Officer Mayer on May 25, 2015. Plaintiff asserted that he never received a response to either grievance.

In the third grievance, Plaintiff claimed that he gave a Step I grievance to Correction Officer Leach on December 16, 2015. Again, Plaintiff asserted that he never received a response to that grievance.

Based on Plaintiff's allegations, the undersigned issued a Report and Recommendation, recommending that Defendant's motion be granted in part and denied in part. (ECF No. 24.) The undersigned found that there was a genuine issue of fact as to whether Plaintiff exhausted the claims related to the first grievance. However, the undersigned found that Plaintiff's claims related to the second and third grievances should be dismissed because Plaintiff only filed Step I grievances and never attempted to exhaust through Step III.

The Court subsequently rejected the Report and Recommendation. (ECF No. 28.) The Court reasoned that "[i]n circumstances similar to this case, where the prisoner did not receive a receipt with a grievance identifier or the prisoner was unable to obtain grievance appeal forms, courts have held that a question of fact exists as to whether the grievance process was reasonably available to the prisoner." PageID.174. Thus, the Court remanded the case back to the undersigned and suggested the undersigned hold an evidentiary hearing on the issue of exhaustion.

On June 7, 2017, the undersigned held an evidentiary hearing. Defendant called three MDOC employees to testify. The first witness to testify was CO Kind. He stated that when he receives a grievance from a prisoner, he always places the grievance in the mailbox. He also stated that he never destroys any prisoners' grievances. On cross-examination, CO Kind testified that Plaintiff gave him grievances but could not recall any specific grievances.

The second witness to testify was CO Holman.[2] He stated that he did not recall having any interactions with Plaintiff. CO Holman also testified that even assuming that Plaintiff gave him grievances, he would have placed the grievances in the mailbox. On cross-examination, CO Holman testified that it was possible that Plaintiff gave him grievances but could not recall any specific grievances.

---

[2] Plaintiff acknowledged that he misidentified CO Holman as CO Holmes in his previous court filings.

The third witness to testify was ARUS Kristen Giesen. She stated that she was familiar with Plaintiff but could not recall whether Plaintiff gave her any grievances. ARUS Giesen stated that if Plaintiff gave her any grievances, she would have forwarded the grievances to the grievance coordinator. On cross-examination, ARUS Giesen testified that she did not remember Plaintiff having a history of filing grievances.

Plaintiff also testified during the evidentiary hearing. He stated that he gave CO Holman multiple Step II grievances. He also pointed out that the three witnesses never denied receiving grievances. On cross-examination, Plaintiff stated that he does not have any record of paying postage disbursement. He further explained that if the prison officials refused to send out the grievances, the grievances would never be sent in the mail and he would not be charged for postage.

As mentioned above, Defendant has the burden to show that Plaintiff failed to exhaust all available administrative remedies. In the opinion of the undersigned, Defendant failed to meet his burden. The undersigned finds Plaintiff's testimony to be reasonably credible. The fact that Plaintiff has successfully pursued several other grievances through Step III supports Plaintiff's position. Plaintiff has demonstrated that he knows the grievance procedure and exercises his diligence in following these procedures. Simply, it does not make sense that Plaintiff—who is never shy to voice his complaints and has obviously filed numerous grievances—would not attempt to exhaust his grievances through Step III.

In addition, the three witnesses could not recall any of Plaintiff's specific grievances, but if they received a grievance, they testified that they would have delivered the grievance to the mailroom or grievance coordinator. Thus, it is certainly possible that CO Kind, CO Holman, and/or ARUS Giesen delivered the grievances. Yet, it is also just as possible that a different prison official interfered with the grievances in the mailroom. It is ultimately Defendant's burden to show that Plaintiff did not exhaust his available administrative remedies. Here, Defendant has failed to meet that burden.

Finally, Defendant did not address the second or third grievances during the evidentiary hearing. Therefore, Defendant failed to meet his burden to show that Plaintiff failed to exhaust his claims in the second and third grievances.

Accordingly, the undersigned finds that Defendant did not meet their burden to demonstrate that Plaintiff failed to properly exhaust his claims. Therefore, the undersigned recommends that Plaintiff be found to have exhausted his available administrative remedies.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  June 27, 2017                     */s/ Timothy P. Greeley*
                                          TIMOTHY P. GREELEY
                                          UNITED STATES MAGISTRATE JUDGE