UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                    Case No. 2:16-CV-166

FRED GOVERN,                  HON. GORDON J. QUIST

    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, D'Andre Alexander, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC), has sued Defendant, Fred Govern, alleging a claim under 42 U.S.C. § 1983 that Govern violated Alexander's First Amendment rights by retaliating against Alexander for filing grievances against Govern and other prison staff. Specifically, Alexander alleges that while he was housed at the Marquette Branch Prison (MBP), Govern retaliated against him by refusing to send out Alexander's legal mail and taking it and refusing to return it to Alexander. Alexander alleges that Govern interfered with his legal mail on three different occasions: (1) May 14, 2015; (2) May 19, 2015; and (3) December 16, 2015. (ECF No. 1 at PageID.6–7.) Alexander's claim was tried to the Court on September 25, 2018. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

The Court now issues its findings of fact and conclusions of law.

### FINDINGS OF FACT

Govern was employed by the MDOC as an Assistant Resident Unit Supervisor (ARUS) at the Marquette Branch Prison at all times relevant to this lawsuit. One of Govern's responsibilities

as an ARUS was picking up prisoner mail, including legal mail. After confirming that a particular piece of mail qualified as legal mail, Govern would deliver it to the mail room. Only two MDOC employees worked in the mail room.

Alexander transferred to MBP in 2014 and was initially placed in "Bravo" unit. Alexander began filing grievances and complaints about prison conditions soon after he arrived at MBP. Alexander first interacted with Govern when Govern was assigned to Bravo unit. Some of Alexander's grievances were against Govern for issues relating to legal mail.

Alexander claimed that Govern kept two pieces of Alexander's legal mail on May 15, 2015, after Alexander told Govern that he no longer wanted to send the two pieces out as legal mail and Alexander requested that Govern return them. Alexander presented two witnesses and their declarations to support his version of events. Govern denied Alexander's allegation that Govern destroyed or did not return Alexander's mail. The Court concludes that Govern did not take or refuse to return Alexander's mail on May 15, 2015. The Court finds Govern's testimony believable and, therefore, credits it over Alexander's testimony and that of his witnesses. In particular, Alexander's witnesses, Petty and Hursey, both signed declarations that were almost identical in terms of wording, punctuation, etc., and testified that each created his own declaration without outside input. There is no reasonable chance of this being true. The fact that Alexander's witnesses were not truthful in their testimony detracts from Alexander's credibility.

As for the May 19, 2015, incident, Alexander presented evidence that he gave Govern three notices of intent to be filed in the Michigan Court of Claims and a legal disbursement form, which Govern signed, and an exhibit from the Court of Claims showing that his notices were never filed in that court. Nonetheless, as stated above, the Court finds Govern's testimony that he did not take, throw away, or otherwise interfere with Alexander's mail credible. There are other explanations for

the notices not being delivered to the Court of Claims, and it is just as likely that someone or something else caused the mail not to be delivered.

Finally, as for the December 16, 2015, incident regarding grievances that were addressed to the MDOC Director's Office, the Court again credits Govern's testimony that he did not interfere with Alexander's legal mail. Moreover, this event occurred many months after the other two, and there is no indication that Alexander had filed any grievance against Govern in the preceding months. In any event, prisoner grievances are an every-day fact of life in a prison setting. Finally, although Alexander claims that the Director's Office did not receive his grievances, Alexander failed to present any admissible evidence proving that fact.

**CONCLUSIONS OF LAW**

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healty City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)).

Alexander's retaliation claim fails on the second and third elements. That is, Alexander failed to show that Govern retaliated against him by interfering with Alexander's legal mail and that Govern acted because of Alexander's protected conduct.

**CONCLUSION**

In sum, the Court concludes that Alexander failed to establish his retaliation claim against Govern.

An appropriate judgment will enter.


Dated: November 15, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE